Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>**Demandante-Apelada**<br><br>ANDRÉS POTES CORREA<br>EDUARDO MELÉNDEZ MULERO<br><br>**Terceros Demandados-Apelados**<br><br>V.<br><br>NEUMOVIDA P.S.C., HYRZA MAGDALYS VÁZQUEZ RIVERA, JASON CHÁVEZ GUERRA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS<br><br>**Demandados-Apelantes** | TA2026AP00373 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm. BY2024CV00033<br><br>Sobre:<br>COBRO DE DINERO-ORDINARIO Y OTROS |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 14 de mayo de 2026.

El 10 de abril de 2026, Neumovida P.S.C. (Neumovida), la Sra. Hyrza Magdalys Vázquez Rivera, el Sr. Jason Chávez Guerras (matrimonio Vázquez-Chávez) y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, los apelantes) comparecieron ante nos mediante *Certiorari*[1] y solicitaron la revisión de una *Sentencia* que se emitió el 5 de febrero de 2026 y se notificó el 9 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior

---

[1] Originalmente, la Secretaría de este Tribunal le asignó al presente caso el alfanumérico TA2026CE00435. Sin embargo, posteriormente se ordenó el cambio de materia, al determinarse que el recurso procedente para atender la presente controversia es una apelación, y no un *certiorari.* En consecuencia, se reasignó el caso bajo el nuevo alfanumérico TA2026AP00373.

de Bayamón (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por Oriental Bank (Oriental), el Sr. Andrés Potes y el Sr. Eduardo Meléndez (en conjunto, los apelados). Determinó que los apelantes no presentaron hechos ni prueba suficiente para sostener su reconvención ni la demanda contra tercero, por lo que ambas fueron desestimadas. Además, ordenó a los apelantes pagar $310,406.25 por concepto de principal adeudado, más intereses, cargos por mora, costas y honorarios de abogado, y autorizó la ejecución de las hipotecas, la prenda y demás garantías ofrecidas para cobrar la deuda.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen apelado.

I.

El 3 de enero de 2024, Oriental presentó una *Demanda* sobre cobro de dinero y ejecución de prenda e hipoteca contra los apelantes, y otros demandados desconocidos.[2] Alegó que, para el año 2022, Neumovida, a través del matrimonio Vázquez-Chávez, solicitó financiamiento para actividades comerciales o profesionales. Sostuvo que, ante ello, el 17 de agosto de 2022 concedió a Neumovida un préstamo comercial por la suma de $322,500.00, formalizado mediante un pagaré intitulado "Pagaré (Préstamo a Término)". Indicó que las partes pactaron el repago del balance en 239 plazos mensuales de $1,343.75, con vencimiento final el 17 de agosto de 2042, y con intereses a una tasa anual fluctuante equivalente a 2.25% sobre la tasa anunciada por Citibank, N.A.

Adujo que, al 19 de diciembre de 2023, Neumovida adeudaba $332,188.37 por concepto de principal, intereses y cargos por mora, y que los intereses continuaban acumulándose a razón de $92.69 diarios. Expresó que, el último pago recibido fue el 18 de julio de

---

[2] *Véase*, Entrada Núm. 1, SUMAC TPI.

2023 por $4,030.34. Sostuvo que los apelantes incumplieron con los términos de la obligación pese a las gestiones de cobro realizadas, incluyendo una carta de cobro de 23 de octubre de 2023, por lo que declaró la deuda vencida, líquida y exigible.

Asimismo, expuso que, para garantizar el pago de las sumas adeudadas, Neumovida y Oriental suscribieron un "Contrato de Prenda y Gravamen Mobiliario" el 17 de agosto de 2022. Indicó que el matrimonio Vázquez-Chávez entregó en prenda dos pagarés hipotecarios. El primero, por $190,000.00, estaba garantizado mediante la Escritura Núm. 128 y gravaba dos propiedades en el Condominio Metro Medical Center en Bayamón: un local de oficina identificado como A-309 y un estacionamiento identificado con el número 9. El segundo pagaré, por $161,000.00, estaba garantizado mediante la Escritura Núm. 129 y gravaba una finca ubicada en la Urbanización Sabanera Dorado, en Dorado, Puerto Rico.

Asimismo, sostuvo que la prenda incluía todo interés, dinero, instrumentos o cualquier propiedad recibida en relación con dichos pagarés, así como cualquier producto o propiedad generada por los inmuebles antes descritos. Expresó que, aunque la finca 14709 de Dorado era residencial, el préstamo cuya ejecución se pretendía era comercial, por lo que no aplicaba la Ley Núm. 184-2012, *infra*, sobre mediación compulsoria.

Añadió que, las escrituras hipotecarias garantizaban, además del principal, sumas adicionales por otros adelantos, daños líquidos, intereses, costas y honorarios de abogado. Señaló que las hipotecas se extendían a accesiones naturales, mejoras, frutos pendientes y cualquier construcción futura en los inmuebles hipotecados. Señaló que las partes estipularon el valor de las propiedades para fines de ejecución: $175,000.00 para la finca núm. 78142, $15,000.00 para la finca núm. 78161 y $161,000.00 para la finca núm. 14709.

Finalmente, solicitó que se dictara sentencia condenando solidariamente a la parte apelante al pago de las cantidades adeudadas por concepto de principal, intereses, gastos, cargos por demora e incumplimiento y honorarios de abogado. Además, pidió que se ordenara la ejecución simultánea de la prenda e hipoteca sobre los bienes descritos y demás garantías ofrecidas, así como la anotación preventiva de aviso de demanda en el Registro de la Propiedad.

En respuesta, el 20 de mayo de 2024, los apelantes presentaron su *Contestación a Demanda, Reconvención y Demanda contra Tercero.*[3] En cuanto a la contestación a la *Demanda,* sostuvieron que, en términos generales, múltiples párrafos de la *Demanda* no requerían alegación responsiva por constituir conclusiones legales, no estar dirigidos contra ellos o referirse a gestiones exclusivas de la parte apelada. En la alternativa, negaron dichas alegaciones. Asimismo, sostuvieron que varias de las imputaciones debían negarse por falta de información suficiente en esa etapa procesal para formular una contestación informada y responsable, reservándose el derecho a enmendar sus respuestas luego del descubrimiento de prueba y del examen del pagaré original y demás documentación en poder de Oriental.

Además, alegaron que Oriental debía demostrar cumplimiento con los requisitos legales aplicables al negocio hipotecario y de préstamos, pues de no haber cumplido con la normativa estatal y federal pertinente carecería de legitimación para instar la causa de acción. También señalaron deficiencias en la demanda, entre ellas la falta de estudio de título, certificaciones registrales y documentos acreditativos de varias de sus alegaciones.

---

[3] *Véase,* Entrada Núm. 20, SUMAC TPI. Cabe precisar que, este escrito fue enmendado el 7 de junio de 2024.

Sostuvieron que el financiamiento fue gestionado para la oficina de Neumovida, pero que Oriental, a sabiendas de que el valor de la propiedad comercial era menor a la cantidad financiada, exigió que se gravara la residencia principal de la sociedad legal compareciente, comprometiendo así su patrimonio personal. Además, expusieron que los documentos firmados no reflejaban fielmente los acuerdos e intenciones originalmente conversados entre las partes. Indicaron que los documentos fueron preparados por el notario siguiendo instrucciones, aprobación y revisión del banco, y que el día de la firma se les indicó que podrían leerlos con detenimiento posteriormente. Como consecuencia, afirmaron haberse percatado solo tras la presentación de la *Demanda* de que el por ciento de financiamiento consignado en los documentos era distinto y mayor al previamente acordado.

Asimismo, argumentaron que Oriental actuó dolosamente al incluir en los documentos términos distintos a los discutidos, particularmente en cuanto a los intereses, y que pretendió confundir al tribunal al resumir el préstamo en la *Demanda* sin transcribir íntegramente el pagaré. Expresaron que, de haber contado con igual oportunidad para revisar los documentos y advertir la discrepancia entre lo acordado y lo escrito, no los hubiesen firmado.

De igual forma, indicaron que nunca entendieron que sus obligaciones se extendieran más allá de lo establecido en los pagarés, y que Oriental no explicó de forma clara y específica el alcance de las garantías exigidas. Afirmaron que, de habérseles explicado adecuadamente, tampoco hubiesen consentido a tales obligaciones. Añadieron que ciertas alegaciones de la *Demanda* fueron presentadas para ejercer presión y coacción, particularmente al amenazar con la pérdida de la única propiedad residencial de ellos.

En cuanto a la Ley Núm.184-2012, *infra*, los apelantes negaron que no fuera aplicable al caso. Alegaron que la propiedad gravada constituía su única propiedad residencial y que, por ello, la mediación compulsoria establecida en dicha ley era de naturaleza jurisdiccional. Argumentaron que, al no haberse cumplido con ese requisito, el tribunal carecía de jurisdicción y procedía la desestimación del pleito.

Finalmente, señalaron que la cláusula que imponía honorarios de abogado por la sola presentación de la *Demanda* era ilícita y contraria al ordenamiento jurídico. Expresaron que, aunque el contrato hiciera referencia a un límite de hasta un diez (10%) por ciento, ello no significaba que Oriental tuviera derecho automático a dicha suma, por lo que le imputaron estar aprovechándose y capitalizando indebidamente esa disposición contractual.

Por otro lado, en la reconvención y demanda contra tercero adujeron que todas las alegaciones eran aplicables a Oriental y a los terceros demandados, incluyendo a dos funcionarios de Oriental, a saber, el Sr. Andrés Potes y el Sr. Eduardo Meléndez. Sostuvieron que la reconvención presentada era de carácter compulsorio por surgir de los mismos hechos que motivaron la demanda original, y que su omisión conllevaría la renuncia de dicha causa de acción. Asimismo, alegaron que la normativa procesal permitía traer terceros al pleito que pudieran ser responsables total o parcialmente de las reclamaciones.

En cuanto a los hechos, expusieron que fueron inducidos por Oriental a someterse a un financiamiento predatorio. Indicaron que, tras el vencimiento de un préstamo previo, acudieron a Oriental buscando un financiamiento con pagos mensuales que no excedieran los $3,000.00, pero que, contrario a lo acordado, el préstamo resultó en pagos significativamente mayores. Alegaron que durante el proceso de cierre se les informó que el pago sería menor,

pero posteriormente surgió que el pagaré reflejaba una tasa de interés distinta y mayor a la negociada, lo que incrementó sustancialmente los pagos mensuales.

Además, manifestaron que, tras el cierre, enfrentaron dificultades económicas agravadas por situaciones personales y que, pese a intentar comunicarse y realizar pagos, los funcionarios del banco dilataron el proceso de mitigación de atrasos y eventualmente refirieron el caso al departamento legal, lo que detuvo las gestiones de pago. Argumentaron que dicho patrón de conducta negligente y dilatoria por parte de Oriental fue la causa del incumplimiento en los pagos.

Expresaron que Oriental incurrió en dolo, negligencia y mala fe en el cumplimiento de sus obligaciones contractuales, por lo que debía responder por los daños causados. Asimismo, sostuvieron que procedía exigir el cumplimiento de las obligaciones en términos justos o su resolución, con el correspondiente resarcimiento de daños. Añadieron que Oriental tenía la obligación de ofrecer alternativas de pago viables conforme a las guías federales aplicables.

De igual forma, argumentaron que el préstamo constituía una práctica de "predatory lending", al no ajustarse a la capacidad de pago del prestatario y contener condiciones desfavorables. También indicaron que Oriental incumplió con su deber de buena fe durante el proceso de mitigación de pérdidas, así como con las disposiciones de la Ley Núm. 184-2012, *infra*, la Ley Núm. 38-2019 y la Ley Núm. 169-2016, al iniciar el proceso de ejecución sin haber culminado adecuadamente dicho proceso y al incurrir en prácticas como el "dual tracking".

Finalmente, expresaron que la conducta de Oriental en el proceso de mitigación fue negligente, dilatoria y carente de buena fe, al no evaluar adecuadamente la solicitud de mitigación de pérdidas,

solicitar repetidamente documentación y ofrecer alternativas onerosas e inviables. Por todo ello, solicitaron la desestimación de la *Demanda* con perjuicio y cualquier otro remedio que en derecho y equidad procediera.

Por su parte, el 17 de junio de 2024, los apelados presentaron su *Contestación a Reconvención y Demanda contra Tercero Enmendada.*[4] Sostuvieron que múltiples párrafos de la reconvención no requerían alegación responsiva por constituir interpretaciones o conclusiones legales, y en la alternativa los negaron. Argumentaron que Oriental no incurrió en conducta indebida y que, por el contrario, en múltiples ocasiones intentó ayudar a los apelantes a cumplir con su obligación de pago, sin éxito. Reiteraron que la Ley Núm. 184-2012, *infra*, no era aplicable al caso por tratarse de un préstamo comercial y no de consumo o de vivienda principal.

Asimismo, puntualizaron que fueron los propios apelantes quienes acudieron a Oriental en busca de opciones de financiamiento para su negocio, las cuales fueron evaluadas y aceptadas por dicha parte. Indicaron que Oriental, a través del señor Potes, trabajó el financiamiento para saldar el préstamo previo con otra institución bancaria y que se les orientó sobre la conveniencia de cerrar la transacción antes de aumentos en las tasas de interés. Añadieron que los apelantes conocían que el préstamo tenía una tasa de interés fluctuante y que el aumento en los pagos mensuales respondió a alzas en las tasas anunciadas por el Tesoro de los Estados Unidos.

Además, adujeron que los apelantes tuvieron oportunidad de revisar los documentos al momento del cierre. Indicaron que, aunque el pagaré hipotecario reflejaba un 4.25% sobre el "prime", el préstamo aplicaba y siempre se cobró al 2.25% sobre dicha tasa,

---

[4] *Véase*, Entrada Núm. 34, SUMAC TPI.

con cuyo pago la parte incumplió. También afirmaron que las garantías ofrecidas fueron explicadas como conjuntas tanto para SBA como para Oriental.

Por otro lado, alegaron que Oriental ofreció múltiples alternativas para el repago y mitigación de la deuda, pero que los apelantes no cooperaron ni cumplieron, ofreciendo diversas excusas para no pagar. Sostuvieron que fue dicha parte quien dilató el proceso de mitigación y provocó su propio incumplimiento, siendo la única responsable del atraso en los pagos. Negaron haber incurrido en negligencia, mala fe o enriquecimiento injusto, y afirmaron que únicamente reclaman lo adeudado conforme a lo pactado. Asimismo, argumentaron que los daños reclamados por los apelantes eran improcedentes, especulativos o autoinfligidos, y que no procedía la desestimación del caso. Reiteraron que los apelantes no habían evidenciado el pago de la deuda.

En cuanto a sus defensas afirmativas, alegaron, entre otras, que la reconvención no exponía una reclamación válida, que la deuda no había sido pagada, que los daños no eran reclamables, que la reclamación estaba prescrita, que los apelantes no mitigaron sus daños, y que incumplieron primero con sus obligaciones contractuales. Sostuvieron que los contratos eran válidos y vinculantes, que Oriental actuó de buena fe y que ofreció múltiples alternativas de pago que no fueron aceptadas. Finalmente, solicitaron al Tribunal que declarara No Ha Lugar la reconvención y demanda contra tercero enmendada y que la desestimara en su totalidad.

Así las cosas, el 1 de abril de 2025, los apelados presentaron una moción mediante la cual informaron que le había cursado un Primer Pliego de Interrogatorios y Producción de Documentos a los

apelantes.[5] Luego de varias controversias relacionadas al descubrimiento de prueba, los apelantes acudieron al Tribunal de Apelaciones mediante *certiorari* en el caso núm. TA2025CE00774 impugnando un asunto relacionado con los interrogatorios cursados por Oriental. Atendida la controversia, el 17 de diciembre de 2025, un panel hermano emitió una *Resolución* desestimando el recurso por falta de jurisdicción, por académico, y al no satisfacer los criterios establecidos en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A tales efectos, el 17 de octubre de 2025, los apelantes presentaron una *Moción Informativa* en la cual indicaron que le habían remitido a Oriental las contestaciones al interrogatorio.[6]

Posteriormente, el 24 de diciembre de 2025, los apelados presentaron una *Solicitud de Sentencia Sumaria* acompañada de toda la prueba documental en apoyo a sus argumentos.[7] En primer lugar, expusieron los hechos esenciales y pertinentes que, a su juicio, no estaban en controversia. Luego puntualizaron que los contratos eran fuente de obligaciones y tenían fuerza de ley entre las partes, quienes quedaban obligadas a su cumplimiento conforme a lo pactado y a la buena fe. Argumentaron que, en el presente caso, los contratos suscritos, incluyendo el Contrato de Préstamo, los Pagarés Hipotecarios y el Contrato de Prenda y Gravamen Inmobiliario, cumplían con los requisitos de validez (consentimiento, objeto y causa), por lo que eran vinculantes y no podían quedar al arbitrio de una de las partes. Añadieron que la deuda no se había extinguido por ninguno de los medios reconocidos en ley, por lo que

---

[5] *Véase*, Entrada Núm. 57, SUMAC TPI.
[6] *Véase*, Entrada Núm. 73, SUMAC TPI.
[7] *Véase*, Entrada Núm. 76, SUMAC TPI. Se hace constar que junto a la solicitud se incluyeron los siguientes documentos: Cont. Interrogatorios y Solicitud de Producción de Documentos, Pagaré (Préstamo a Término), Certificación de Balance, Historial de Pago, Carta de Cobro, Contrato de Prenda y Gravamen Mobiliario, Pagaré Hipotecario de $190,000, Escritura Núm. 128 de Hipoteca, Pagaré Hipotecario de $161,000 y Escritura Núm. 129 de Segunda Hipoteca.

era exigible. Sostuvieron que ante el incumplimiento de los apelantes en el pago del préstamo y demás obligaciones, tenían derecho a reclamar el principal, intereses, penalidades, costas, honorarios y a ejecutar las garantías pactadas.

Expresaron que los apelantes constituyeron válidamente contratos de prenda e hipoteca en garantía de sus obligaciones, entregando pagarés hipotecarios y bienes muebles e inmuebles. Indicaron que estas garantías les permite el cobro de dinero y ejecución de prenda e hipoteca ante el incumplimiento. Expusieron que la hipoteca constituía un derecho real accesorio que garantizaba la deuda y permitía perseguir los bienes hipotecados, sin excluir la responsabilidad personal del deudor por cualquier deficiencia.

Argumentaron que los tribunales deben velar por el cumplimiento de contratos válidos y autorizar la ejecución de las garantías cuando existiera incumplimiento. Asimismo, solicitaron la desestimación de la reconvención y demanda contra tercero al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 por no exponer hechos que justifiquen la concesión de un remedio. Adujeron que dichas reclamaciones no identificaban incumplimiento, conducta ilícita, daños reales ni nexo causal, ni establecían responsabilidad personal de los terceros demandados, cuyas actuaciones se dieron dentro del curso ordinario de sus funciones.

Finalmente, se solicitaron que se dictara sentencia sumaria a su favor, se les ordenara a los apelantes a pagar las sumas adeudadas por concepto de principal, intereses, cargos por mora, costas y honorarios de abogado, incluyendo honorarios por temeridad, y se ordenara la ejecución simultánea de las prendas e hipotecas. Asimismo, solicitaron la desestimación de la reconvención y la demanda contra tercero.

Atendida la referida solicitud, el 29 de diciembre de 2025, el TPI emitió una *Orden* que se notificó el 30 de diciembre de 2025, concediéndole treinta (30) días a los apelantes para que presentaran su postura en cuanto a la solicitud de sentencia sumaria.[8] Transcurrido los treinta (30) días concedidos a la parte apelante sin que sometieran su oposición a la solicitud de sentencia sumaria, el 30 de enero de 2026, los apelados presentaron una *Moción para que se de por Sometida la Solicitud de Sentencia Sumaria de la Parte Demandante*.[9] Señalaron que, 24 de diciembre de 2025, presentaron una *Solicitud de Sentencia Sumaria* y que posteriormente, el 30 de diciembre de 2025, el TPI concedió a la parte apelante un término de treinta (30) días para presentar su réplica, cuyo vencimiento era el 29 de enero de 2026. No obstante, indicaron que los apelantes no presentaron réplica ni oposición, ni solicitaron prórroga, y tampoco constaba auxilio de jurisdicción que la relevara de cumplir con dicho término. Por ello, solicitaron que diera por sometida la *Solicitud de Sentencia Sumaria* sin la réplica u oposición de los apelantes.

En vista de lo antes expuesto, el 31 de enero de 2026, los apelantes presentaron una *Moción sobre Intención de Oponerse* […].[10] En esta, solicitaron una prórroga adicional de treinta (30) días para presentar su oposición a la *Solicitud de Sentencia Sumaria*. Fundamentaron su petición en la carga de trabajo del abogado suscribiente, quien alegó que estaba atendiendo asuntos urgentes de naturaleza jurisdiccional, así como en que estaría sometiéndose a tratamientos de salud por una condición crónica que podrían implicar viajes fuera de Puerto Rico. Asimismo, alegaron que el término concedido no era de naturaleza jurisdiccional y que la extensión solicitada no afectaría derechos sustantivos de las partes.

---

[8] *Véase*, Entrada Núm. 78, SUMAC TPI.
[9] *Véase*, Entrada Núm. 82, SUMAC TPI.
[10] *Véase*, Entrada Núm. 83, SUMAC TPI.

Indicaron que la solicitud se presentaba conforme a las Reglas 6.6 y 9.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.6 y 9.1 sosteniendo que existía justa causa para la prórroga solicitada.

En cuanto a la solicitud presentada por los apelados para que se diera por sometida la *Solicitud de Sentencia Sumaria*, el 2 de febrero de 2026, el TPI emitió una *Orden* que se notificó el 4 de febrero de 2026, en la cual expresó que se daba por sometida dicha solicitud. Por otro lado, con relación a la solicitud de prórroga presentada por los apelantes, ese mismo día, el TPI emitió una *Orden* declarándola No Ha Lugar.

Así las cosas, el 5 de febrero de 2026, el TPI emitió una *Sentencia* que se notificó el 9 de febrero de 2026.[11] En primer lugar, formuló las siguientes determinaciones de hechos:

1. Oriental es una corporación bancaria creada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, con dirección física en 254 Ave. Muñoz Rivera, Esquina Chardón, San Juan, PR 00917, su dirección postal es P.O. Box 195115 San Juan, PR 00919-5115, su número de teléfono es el (787) 771-6800 y su fax es (787) 281-5026.

2. Vázquez Rivera es deudora de Oriental. Su última dirección física y postal conocida es: Calle 2 J-12 Hermanas Dávila, Bayamón PR, 00961. Su última dirección postal conocida es Metro Medical Center 1995, Suite 309 A, Bayamón, PR, 00959.

3. El codemandado, Chávez Guerra es deudor de Oriental. Su última dirección física y postal conocida es: Cambalache 503, Sabanera Dorado, Dorado PR, 00643.

4. Neumovida, es una corporación de servicios médicos organizada y existente bajo las Leyes del Estado Libre Asociado de Puerto Rico. La referida corporación es deudora principal de Oriental. Su última dirección física y postal conocida es: Metro Medical Center #1995, Suite 309-A, Bayamón, PR 00959 y la dirección postal es: Calle 2 J-12, Hermanas Dávila, Bayamón, PR 00961. Véase párrafo 4 de la Demanda.

---

[11] *Véase*, Entrada Núm. 87, SUMAC TPI.

5. Para el año 2022, Neumovida, Vázquez Rivera, Chávez Guerra, y la SLG solicitaron a Oriental un financiamiento comercial.

6. El 17 de agosto de 2022, Oriental concedió a la parte Demandada un financiamiento comercial solicitado por la cantidad de $322,500.00, motivo por el cual, en esa misma fecha, éstos suscribieron varios documentos, entre otros, un contrato de préstamo intitulado "Pagaré (Préstamo a Término)" ante el notario público Juan Surillo Pumarada, bajo el testimonio de autenticidad número 11,328 (en adelante el "Préstamo #8783721025-1").

7. Mediante el Préstamo #8783721025-1, las partes acordaron, entre otros:

   a. La cantidad de principal de la deuda lo es la suma de $322,500.00;

   b. El balance insoluto del principal, antes mencionado, sería pagadero en 239 plazos mensuales, consecutivos e iguales de principal e intereses de $1,343.75 cada uno, pagaderos el 17 de cada mes; comenzando el día 17 de septiembre de 2022;

   c. El interés por pagar sobre el balance del principal adeudado desde la fecha de su desembolso hasta su pago total sería una tasa anual fluctuante (sobre la base de un año de 360 días) equivalente a 2.25% sobre la tasa anunciada por Citibank, N.A., de tiempo en tiempo, en sus oficinas principales en Nueva York.

   d. La fecha de vencimiento del Préstamo #8783721025-1 sería el 17 de agosto de 2042, fecha en la cual la parte Demandada vendría obligada a saldar la totalidad de la deuda, si es que no hubiera incumplido antes. El pagaré faculta a Oriental a acelerar la deuda ante eventos de incumplimiento del deudor.

8. Al 24 de diciembre de 2025, la parte Demandada adeuda a la Demandante las siguientes sumas, las cuales devengan intereses y otras partidas hasta su total pago a la tasa anual según se establece a continuación:

| Préstamo original #8783721025- 1 | Principal Adeudado (al 24 de diciembre de 2025) | Intereses (al 24 de diciembre de 2025 | Cargos por Mora (al 24 de diciembre de 2025) | Total Adeudado (al 24 de diciembre de 2025) |
|---|---|---|---|---|
| $322,500.00 | $310,406.25 | $84,149.07 | $6,651.11 | $401,206.43 |

9. Los intereses continúan acumulándose a razón de $77.60 diarios, desde el 25 de diciembre de 2025, hasta su pago total.

10. El último pago recibido por la parte Demandante fue efectuado el 18 de julio de 2023 por la cantidad de $4,030.34.

11. La parte Demandada ha incumplido con los términos de la obligación antes mencionada.

12. Las partes acordaron que la tasa de interés a ser devengada sería a razón de 2.25% sobre la tasa anunciada por Citibank, N.A., de tiempo en tiempo, en sus oficinas principales en Nueva York.

13. Dado el incumplimiento con los términos de repago del Préstamo #8783721025-1, Oriental declaró la deuda vencida, líquida y exigible.

14. La parte Demandada admitió expresamente que con relación al Préstamo #8783721025-1 adeuda a Oriental, la cantidad de $310,406.25 por concepto de principal.

15. Para garantizar el pago de las sumas adeudadas antes referidas, las partes suscribieron un "Contrato de Prenda y Gravamen Mobiliario" el 17 de agosto de 2022 ante el notario Juan Surillo Pumarada, bajo el testimonio 11,331.

16. Neumovida, Vázquez Rivera, Chávez Guerra y la SLG, entregaron en prenda los siguientes pagarés hipotecarios:

    a. Pagaré (a) por la cantidad de $190,000.00 otorgado el 17 de agosto de 2022, ante el notario público Juan Surillo Pumarada bajo el testimonio de autenticidad número 11,329 y asegurado por una Hipoteca en Garantía de Pagaré, constituida mediante la Escritura Número 128 de esa misma fecha ante el mismo notario.

    b. Pagaré (b) por la cantidad de $161,000.00 otorgado el 17 de agosto de 2022, ante el notario público Juan Surillo Pumarada bajo el testimonio

de autenticidad número 11,330 y asegurado por una Hipoteca en Garantía de Pagaré, constituida mediante la Escritura Número 129 de esa misma fecha ante el mismo notario.

17. Pagaré (a) antes descrito grava las siguientes propiedades:

--(A) URBANA: Propiedad Horizontal: Local "A" guion trescientos nueve (A-309) Local para oficina situado en la tercera planta del Edificio "A" del Condominio Metro Medical Center, ubicado en la calle Marginal, "PR" guión dos (PR-2), Barrio Pájaros, Urbanización Hermanas Dávila, Bayamón, Puerto Rico, con un área superficial de mil cuarenta y uno punto veintisiete (1,041.27) pies cuadrados, equivalentes a noventa y seis punto setenta y nueve (96. 79) metros cuadrados, y que colinda: por el NORTE, en treinta y nueve pies (39') nueve pulgadas (9"), con pasillo comunal y área de escalera; por el SUR, en treinta y nueve pies (39') nueve pulgadas (9"), con elementos del edificio; por el ESTE, en veintiséis pies (26') tres pulgadas (3"), con oficina "A" guión trescientos ocho (A-308); y por el OESTE, en veintiséis pies (26') tres pulgadas (3"), con la oficina "A" guión trescientos diez (A-310). La entrada a este local es por su lado Sur. Le corresponde una participación de cero punto seiscientos Cuarenta porciento (0.640%), en los elementos comunes generales del Condominio.

---Por su procedencia se encuentra afecta a las siguientes: a. Servidumbre a favor de la Autoridad de Acueductos y Alcantarillados de Puerto Rico. b. Servidumbre a favor de la Autoridad de Fuentes Fluviales de Puerto Rico. c. Servidumbre a favor de la Autoridad de Energía Eléctrica de Puerto Rico. d. Servidumbre a favor del Municipio de Bayamón. e. Servidumbre a favor de la Puerto Rico Telephone Company. f. Condiciones restrictivas sobre edificación y uso. g. Servidumbre a favor de Renovación Urbana y Vivienda de Puerto Rico.

---Por sí se encuentra afecta a Hipoteca en garantía de un pagaré a favor de Banco Popular de Puerto Rico, o a su orden, por la suma principal de cuatrocientos veinte mil Dólares ($420,000.00), con intereses al Prime Rate anual, vencedero a la Presentación, constituida mediante la escritura número ciento treinta y siete (137), otorgada en Bayamón, Puerto Rico, el día veintidós (22) de julio de dos mil nueve (2009), ante el notario Rafael Maldonado Nicolai. Inscrita al folio dieciocho (18)

del tomo mil ochocientos ochenta y nueve (1889) de Bayamón Sur, finca número setenta y ocho mil ciento cuarenta y dos (78142) inscripción 2da, la cual será cancelada con el producto de este préstamo. Catastro Número: 085-024-201-38-029. (en adelante "la Finca 78142")

---(B) URBANA: Propiedad Horizontal: Estacionamiento marcado con el número nueve (9) en el segundo nivel del Edificio B del Condominio Metro Medical Center ubicado en la calle Marginal, PR guion dos (PR-2) Barrio Pájaros, Urbanización Hermanas Dávila, Bayamón, Puerto Rico, con un área superficial de ciento cuarenta y siete punto setenta y cinco (147.75) pies cuadrados, equivalentes a trece punto setenta y tres (13.73) metros cuadrados, y que colinda por el NORTE, en ocho pies dos y media pulgadas (8'-2 ½"), con rampa de acceso a los estacionamientos; por el SUR, en ocho (8) pies dos y media (8'- 2 ½") con elementos exteriores de edificio; por el ESTE, en dieciocho (18) pies, con el estacionamiento número ocho (8); y por el OESTE, en dieciocho (18) pies con el estacionamiento número diez (10). Le corresponde una participación de cero punto noventa y uno porciento (0.091 %) en los elementos comunes generales del Condominio.

---Por su procedencia se encuentra afecta a las siguientes: a. Servidumbre a favor de la Autoridad de Acueductos y Alcantarillados de Puerto Rico. b. Servidumbre a favor de la Autoridad de Fuentes Fluviales de Puerto Rico. c. Servidumbre a favor de la Autoridad de Energía Eléctrica de Puerto Rico. d. Servidumbre a favor del Municipio de Bayamón. e. Servidumbre a favor de la Puerto Rico Telephone Company. f. Condiciones restrictivas sobre edificación y uso.

---Por sí se encuentra afecta a: Hipoteca en garantía de un pagaré a favor de Banco Popular de Puerto Rico, o a su orden, por la suma principal de veinticinco ($25,000.00), con intereses al Prime Rate anual, vencedero a la Presentación, constituida mediante la escritura número ciento treinta y ocho (138), otorgada en San Juan, Puerto Rico, el día veintidós (22) de julio de dos mil nueve (2009), ante el notario Rafael Maldonado Nicolai. Inscrita al folio treinta y siete (37) del tomo mil ochocientos ochenta y nueve (1889) de Bayamón Sur, finca número setenta y ocho mil ciento sesenta y uno (78161) del Registro de la Propiedad, Sección I de Bayamón, inscripción 2da, la cual será

cancelada con el producto de esta transacción. (en adelante "la Finca 78161")

Catastro Número: 085-014-201-38-128

18. El párrafo 17 de la Escritura 128 de Hipoteca que garantiza el Pagaré (a) provee para garantizar, además de la cantidad principal de $190,000.00 establecida en el mismo, por la cual responde la finca 78142 por la suma de $175,000.00 y la finca 78161 por la suma de $15,000.00. La Hipoteca garantiza, además, las siguientes partidas adicionales:

a. La "Suma Líquida para otros Adelantos" de $19,000.00 por la cual responde la finca 78142 por la suma de $17,500.00 y la finca 78161, por la suma de $1,500.00.

b. La "Suma Adicional para Daños Líquidos" es $19,000.00, por la cual responde la finca 78142, por la suma de $17,500.00 y la finca 78,161, por la suma de $1,500.00.

19. Además, el párrafo 3 de la Escritura 128 de Hipoteca que garantiza el Pagaré (a), hace extensivo dicho gravamen hipotecario a accesiones naturales, a las mejoras, a los frutos pendientes o cualquier mejora o edificación existente o que con posterioridad a dicha Hipoteca se haga o construya en el inmueble hipotecado.

20. Las partes acordaron en el Pagaré Hipotecario (a), la suma líquida de $19,000.00 por costas y honorarios de abogado, suma que exigible [sic] por el solo hecho de la radicación de una Demanda.

21. Las partes en la Escritura 128 de Hipoteca estipularon el valor para la propiedad en caso de ejecución según requiere la Ley. A esos efectos los deudores acordaron que el valor de la finca 78142 lo es la suma de $175,000.00 y el valor para la finca 78,161 lo es la suma de $15,000.00.

22. El Pagaré (b) grava la siguiente propiedad:

RÚSTICA: Predio de terreno identificado con el número 503 en el plano de la Urbanización Sabanera Dorado, radicado en el Barrio Higuillar del término municipal de Dorado, Puerto Rico, con una cabida de mil doscientos veintisiete punto cuarenta y cinco (1,227.45) metros cuadrados. En lindes por el NORTE, con área verde de la

Urbanización; por el SUR, con el solar número quinientos dos (502); por el ESTE, con lo solares números cuatrocientos ochenta y nueve (489) y cuatrocientos noventa (490); y por el OSTE, con Camino de Cambalache. Enclava en este solar una estructura de una planta dedicada a vivienda. Este solar está afectado por una servidumbre a favor de la Junta Reglamentadora de Telecomunicaciones, con un ancho de uno punto cincuenta (1.50) metros y la cual discurre a lo largo de la colindancia Oeste. Afecta este predio una servidumbre de la Autoridad de Energía Eléctrica de uno punto cincuenta (1.50) metros de fondo localizado en la colindancia Oeste de dicho solar. Por su procedencia está afecta a: a. Servidumbre a favor de la Autoridad de Acueductos y Alcantarillados de Puerto Rico; b. Servidumbre a favor de la Autoridad de Energía Eléctrica de Puerto Rico; c. Servidumbre a favor de la Junta Reglamentadora de Telecomunicaciones de Puerto Rico. d. Servidumbre a favor de la Puerto Rico Telephone Company. e. Condiciones restrictivas sobre edificación y uso. Por sí está afecta a Hipoteca en garantía de un pagaré a favor de Popular Mortgage, lnc., o a su orden, por la suma principal de Setecientos Cincuenta Mil Dólares ($750,000.00), con intereses al cuatro y medio porciento (4 ½%) anual, vencedero el día primero (1) de julio de dos mil cuarenta y uno (2041), constituida mediante la escritura número veinticuatro (24), otorgada en Guaynabo, Puerto Rico, el día treinta (30) de junio de dos mil once (2011), ante la notario Eda Mariel Ayala Morales. Inscrita al folio ochenta y seis (86) del tomo mil ochocientos doscientos setenta y tres (273) de Dorado, finca número catorce mil setecientos nueve (14709), inscripción primera del Registro de la Propiedad, Sección IV de Bayamón, inscripción 1ra.

Catastro Número: 037-065-371-23-000.

(en adelante "la Finca 14,709")

23. Aunque la Finca 14709 es una residencial, el préstamo que se pretende ejecutar es uno comercial por lo no le es de aplicación la Ley 184 de 17 de agosto de 2012 sobre mediación compulsoria al presente pleito.

24. El párrafo 17 de la Escritura 129 de Hipoteca que garantiza el Pagaré (b) provee para garantizar, además de la cantidad principal de $161,000.00 establecida en el mismo, las siguientes partidas adicionales:

a. La "Suma Adicional para Intereses" es igual al monto de la suma de cinco anualidades de intereses sobre el Pagaré Hipotecario.

b. La "Suma Líquida para otros Adelantos" por la cantidad de $16,100.00.

c. La "Suma Adicional para Daños Líquidos" por la cantidad de $16,100.00.

25. Además, el párrafo 3 de la Escritura 129 de Hipoteca que garantiza el Pagaré (b), hace extensivo dicho gravamen hipotecario a accesiones naturales, a las mejoras, a los frutos pendientes o cualquier mejora o edificación existente o que con posterioridad a dicha Hipoteca se haga o construya en el inmueble hipotecado.

26. Similarmente, las partes acordaron en el Pagaré Hipotecario (b), la suma líquida de $16,100.00 por costas y honorarios de abogado, suma que será exigible por el solo hecho de la radicación del presente pleito.

27. Las partes en la Escritura 129 sobre Hipoteca, estipularon el valor para la propiedad Finca 14709, en caso de ejecución según requiere la Ley. A esos efectos le asignaron el valor de $161,000.00.

28. El contrato de préstamo faculta a Oriental a acelerar la deuda y reclamar el pago inmediato tras eventos de incumplimiento de la parte Demandada, como lo es la falta de pago.

29. La parte Demandada entregó en prenda todo interés, dinero, instrumentos, o cualquier propiedad recibida o distribuida de tiempo en tiempo con relación a, o a cambio de, el o los pagaré(s) antes mencionados. Igualmente, todo producto, interés, o propiedad de cualquier tipo generada por las propiedades descritas en los párrafos anteriores.

Luego, conforme a estas determinaciones de hechos, la prueba documental que obra del expediente y el derecho aplicable determinó que procedía dictar sentencia sumaria a favor de los apelados, al concluir que no existía controversia real sustancial sobre hechos materiales conforme a la Regla 36 de Procedimiento Civil, *infra*.

Particularmente, resolvió que los contratos suscritos entre las partes eran válidos y vinculantes, al cumplir con los requisitos de consentimiento, objeto y causa lícita, conforme al Código Civil de Puerto Rico 2020, *infra*. Puntualizó que las obligaciones contractuales tenían fuerza de ley entre las partes y debían cumplirse conforme a lo pactado, bajo el principio de "*pacta sunt servanda*". Asimismo, concluyó que la deuda no se había extinguido por ninguno de los modos legales de extinción de obligaciones, por lo que continúa vigente y exigible.

Asimismo, determinó que los apelantes incumplieron con sus obligaciones bajo el Contrato de Préstamo identificado como Préstamo #8783721025-1, así como bajo los instrumentos de garantía relacionados. Indicó que el incumplimiento activaba el derecho de los apelados a reclamar el pago de la deuda y a ejecutar las garantías pactadas. Específicamente, en relación con las garantías, concluyó que los apelantes otorgaron válidamente contratos de prenda y gravámenes mobiliarios, incluyendo pagarés hipotecarios, así como hipotecas constituidas sobre bienes inmuebles debidamente inscritos en el Registro de la Propiedad. Expresó que, aunque estas garantías eran accesorias a la obligación principal, permitían la ejecución en caso de incumplimiento. Asimismo, señaló que la hipoteca no eliminaba la responsabilidad personal del deudor por cualquier balance pendiente luego de la ejecución del bien hipotecado.

Por otra parte, analizó la Reconvención y la Demanda contra Tercero presentadas por los apelantes, concluyendo que las mismas no exponían hechos que justificaran la concesión de un remedio bajo la Regla 10.2 de Procedimiento Civil, *supra*. Determinó que no se identificaban actos u omisiones concretas atribuibles a Oriental ni a los terceros demandados que constituyeran incumplimiento contractual, dolo, negligencia o conducta ilícita, ni se alegaban

daños reales, ciertos y cuantificables ni nexo causal. Asimismo, resolvió que las alegaciones contra los terceros demandados no establecían responsabilidad personal, ya que las actuaciones imputadas se realizaron dentro del curso ordinario de sus funciones. Por ello, declaró No Ha Lugar la Reconvención y la Demanda Contra Tercero y las desestimó.

Finalmente, dictó sentencia sumaria a favor de los apelados y condenó a la parte apelante al pago total de $438,306.43, correspondiente al Préstamo #8783721025-1, desglosado en $310,406.25 de principal, $84,149.07 de intereses acumulados al 24 de diciembre de 2025, intereses adicionales a razón de $77.60 diarios desde esa fecha hasta el pago total, y $6,651.11 por cargos por mora. Además, les impuso el pago de costas y honorarios de abogado según pactados en los pagarés hipotecarios, incluyendo $19,000.00 por el Pagaré (a) y $16,100.00 por el Pagaré (b). También ordenó la ejecución simultánea de la prenda e hipotecas sobre los bienes descritos, así como de las demás garantías ofrecidas.

Inconformes con este dictamen, el 21 de febrero de 2026, los apelantes presentaron una solicitud de reconsideración.[12] Por su parte, el 5 de marzo de 2026, los apelados presentaron una oposición a la solicitud de reconsideración.[13] Evaluados los escritos, el 10 de marzo de 2026, el TPI emitió una *Resolución* que se notificó el 11 de marzo de 2026, declarando No Ha Lugar la solicitud de reconsideración.[14] Aún en desacuerdo, los apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> **ERRÓ Y ABUSO DE DISCRECIÓN EL FORO DE INSTANCIA AL NO PERMITIR A LA PARTE RECURRENTE SOMETER SU OPOSICIÓN A LA SOLICITUD DE SENTENCIA SUMARIA DE LA PARTE RECURRIDA EN UNA FECHA POSTERIOR, CUANDO**

---

[12] *Véase*, Entrada Núm. 88, SUMAC TPI.
[13] *Véase*, Entrada Núm. 90, SUMAC TPI.
[14] *Véase*, Entrada Núm. 92, SUMAC TPI.

**EL ABOGADO DE EPÍGRAFE (LCDO. GIERBOLINI) EXPUSO RAZONES DE PESO O VÁLIDAS PARA SOLICITAR PRESENTAR DICHA OPOSICIÓN EN UNA FECHA POSTERIOR SIENDO LA MISMA NO JURISDICCIONAL O DE TÉRMINO FATAL O EXTINTIVO.**

**ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DICTAR SENTENCIA SUMARIA EN ESTE CASO QUE PRESENTA HECHOS CLARAMENTE CONTROVERTIDOS Y SUSTANCIALES DE ÍNDOLE JURISDICCIONAL Y QUE REMITEN AL DEBIDO PROCESO DE LEY.**

Atendido el recurso, el 13 de abril de 2026, emitimos una *Resolución* concediéndole a los apelados hasta el 30 de abril de 2026 para presentar su oposición al recurso. Oportunamente, los apelados presentaron su *Alegato de la Parte Apelada* […] y negaron que el TPI cometiera los errores que los apelantes le imputaron. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

II.

**-A-**

Las Reglas de Procedimiento Civil de Puerto Rico fueron enmendadas con el propósito de agilizar el manejo de los casos en el trámite judicial. *Véase*, Exposición de Motivos de la Ley Núm. 220-2009. Así pues, a los fines de evitar dilaciones innecesarias e injustificadas en la tramitación de los pleitos, se contempló otorgar discreción a los tribunales para que, en determinadas circunstancias, puedan reducir o alargar algunos de los términos que disponen las reglas procesales. Al ejercitar tal discreción, los tribunales siempre deben procurar un justo balance entre la aspiración de promover de forma rápida la tramitación de los casos ante su consideración y la firme política judicial de que estos sean atendidos y resueltos en sus méritos. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1.

Cónsono con este propósito, la Regla 6.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.6, establece las normas que se deben

seguir cuando se presenta una solicitud de prórroga. En específico, la norma procesal dispone como sigue:

> Toda solicitud de prórroga deberá acreditar la existencia de justa causa con explicaciones concretas debidamente fundamentadas. **Cualquier solicitud de prórroga deberá presentarse antes de expirar el plazo cuya prórroga se solicita y hacerse conforme lo establece la Regla 68.2.** El término de la prórroga comenzará a transcurrir al día siguiente del vencimiento del plazo cuya prórroga se solicita. 32 LPRA Ap. V, R. 6.6 (Énfasis suplido).

Por su parte, la Regla 68.2 de dicho cuerpo reglamentario, 32 LPRA Ap. V, R. 68.2, provee para la reducción o prórroga de términos concediéndole al adjudicador un margen de discreción para poder alargar o acortar algunos de los términos dispuestos en las Reglas. Su propósito es agilizar la tramitación de los asuntos litigiosos, sin obviar el derecho de las partes a tener su día en corte y ser oídos. En particular, la norma procesal establece lo siguiente:

> Cuando por estas reglas, por una notificación dada en virtud de sus disposiciones o por una orden del tribunal se requiera o permita la realización de un acto en o dentro de un plazo especificado, el tribunal podrá, por justa causa, en cualquier momento y en el ejercicio de su discreción: (1) **ordenar, previa moción o notificación, o sin ellas, que se prorrogue o acorte el término si así se solicita antes de expirar el término originalmente prescrito o según prorrogado por orden anterior**, o (2) **permitir, en virtud de moción presentada después de haber expirado el plazo especificado, que el acto se realice si la omisión se debió a justa causa**, pero no podrá prorrogar o reducir el plazo para actuar bajo las disposiciones de las Reglas 43.1, 44.1, 47, 48.2, 48.4, 49.2 y 52.2, salvo lo dispuesto en éstas bajo las condiciones en ellas prescritas. (Énfasis suplido).

Asimismo, en el contexto específico del mecanismo de sentencia sumaria, la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b), dispone expresamente que "[l]a contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación". Dicho término responde igualmente al propósito de lograr una adjudicación rápida

y eficiente de aquellos casos en los que no exista controversia real sobre hechos materiales.

De conformidad con lo anterior, nuestro Tribunal Supremo ha reiterado que los tribunales pueden prorrogar términos de cumplimiento estricto cuando medie justa causa. *Banco Metropolitano v. Berríos*, 110 DPR 721, 723 (1981). Ello responde a la diferencia existente entre los términos jurisdiccionales, cuyo incumplimiento impide la revisión judicial por privar de jurisdicción a los tribunales, y aquellos de cumplimiento estricto, los cuales pueden ser prorrogados judicialmente bajo circunstancias apropiadas. *Soto Pino v. Uno Radio Group*, 189 DPR 84, 92 (2013). No obstante, para justificar la extensión de un término de cumplimiento estricto, la parte promovente debe demostrar adecuadamente las razones que le impidieron cumplir oportunamente con el término aplicable. *Cruz Parrilla v. Depto. Vivienda*, 184 DPR 393, 403 (2012).

En cuanto al requisito de justa causa, nuestro más Alto Foro ha enfatizado que este debe acreditarse **mediante explicaciones concretas, particulares y evidenciadas que permitan al tribunal concluir razonablemente que existió una justificación válida para la tardanza.** (Énfasis suplido) *Febles v. Romar*, 159 DPR 714, 720 (2003). Por ello, **las alegaciones vagas, genéricas o estereotipadas resultan insuficientes para satisfacer dicho estándar.** (Énfasis suplido) Íd. A esos efectos, el Tribunal Supremo ha advertido que permitir excusas automáticas o carentes de detalles específicos trastocaría el ordenamiento procesal y menoscabaría la finalidad de las reglas dirigidas a promover la diligencia y la pronta solución de los litigios. *Soto Pino v. Uno Radio Group*, supra, pág. 93.

**-B-**

En esencia, como mencionamos anteriormente, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012). Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una cuestión que permita concluir que existe una controversia real y sustancial sobre hechos

relevantes y pertinentes". *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021).

La Regla 36.2 de Procedimiento Civil, *supra*, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al., supra,* pág. 677. Por el contrario, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo,* supra, pág. 432. Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria. Al amparo de dicha regla, en la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay

alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra, et al.*, 186 DPR 713, 757 (2012).

Ahora bien, según *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el TPI al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al TPI. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del TPI en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**-C-**

Las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos lícitos, las acciones u omisiones en la cual medie culpa o negligencia y cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil de 2020, 31 LPRA sec.8984. En lo pertinente al asunto ante nos, los contratos son un negocio jurídico bilateral en el cual dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratos son negocios jurídicos desde que las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9772. Mediante un contrato las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753. **Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley.** (Énfasis suplido) Art. 1233 del Código Civil 2020, 31 LPRA sec. 9754. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.,* 143 DPR 610, 627 (1997).

Cónsono con lo anterior, sabido es que, en el ámbito de las obligaciones y contratos, es una doctrina fundamental que cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 354 del Código Civil de 2020, 31 LPRA sec. 6342. Los términos de un contrato se reputan claros "cuando por sí mismos son bastantes lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias, ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos

o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009). **Así pues, en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes.** (Énfasis nuestro) Íd.

-D-

El contrato de préstamo constituye un negocio jurídico mediante el cual una parte, denominada prestamista, entrega a otra, denominada prestatario, una cantidad determinada de bienes fungibles, transfiriéndole su propiedad, con la obligación correlativa de restituir posteriormente igual cantidad de bienes de la misma especie y calidad. Art. 1324 del Código Civil de 2020, 31 LPRA sec. 10081. Así, una vez perfeccionado el contrato y desembolsados los fondos objeto del préstamo, nace para el prestatario la obligación de cumplir con los términos pactados y devolver las sumas adeudadas conforme a las condiciones convenidas entre las partes.

En cuanto al cumplimiento de las obligaciones dinerarias, el Art. 1074 del Código Civil de 2020, 31 LPRA sec. 9009, dispone que el pago de las deudas de dinero debe efectuarse en la especie pactada y, de no ser ello posible, en moneda de curso legal en Puerto Rico. Asimismo, la entrega de instrumentos negociables en pago de una obligación produce únicamente los efectos que determine la ley. Íd. De esta manera, mientras subsista la obligación principal y no se haya satisfecho conforme a derecho, el acreedor conserva intacto su derecho a exigir el cumplimiento íntegro de la prestación adeudada.

Por otro lado, el Art. 1327 del Código Civil de 2020, 31 LPRA sec. 10084, establece expresamente que el préstamo se presume oneroso salvo pacto en contrario. En consecuencia, cuando las partes acuerdan el pago de intereses, cargos y demás condiciones económicas del financiamiento, tales estipulaciones resultan obligatorias y vinculantes entre ellas, conforme al principio de

autonomía contractual y al principio de *pacta sunt servanda*. Así, el prestatario queda obligado no solo a devolver el principal desembolsado, sino también a satisfacer los intereses, cargos por mora y demás partidas válidamente pactadas en el contrato.

Cabe señalar que, el contrato de préstamo, además de establecer una obligación pecuniaria principal, normalmente conlleva o requiere de una obligación accesoria entre el acreedor prestamista y el deudor prestatario en garantía de su cumplimiento. Por obligación accesoria, entiéndase una obligación subordinada a y que complementa una obligación principal. O. Soler Bonnin, *Obligaciones y Contratos, Manual para el Estudio de la Teoría General de las Obligaciones y del Contrato en el Derecho Civil Puertorriqueño*, Ediciones Situm, 2014, pág. 51. Con lo cual, al explicar su naturaleza y características, la Profesora Olga Soler Bonnin señala que las obligaciones accesorias:

> [...], siguen la misma suerte de la obligación de la que dependen, y se extinguen cuando se extingue la obligación principal. Pero, por el contrario, la extinción de una obligación accesoria no extingue la obligación principal (por ejemplo: las cláusulas penales y las garantías reales o personales...).
>
> - Por su origen pueden ser legales, [...], o voluntarias, si han sido agregadas a la obligación principal por voluntad de las partes (por ejemplo: las cláusulas penales y la obligación de pagar intereses).
>
> - Por su finalidad, se dividen en complementarias [...] y de garantía, siendo estas últimas las de mayor importancia, que, a su vez, pueden ser de carácter personal (por ejemplo: la fianza y la cláusula penal) o de carácter real (por ejemplo: la prenda y la hipoteca). Íd.

Cónsono con lo anterior, nuestro ordenamiento jurídico reconoce que el deudor responde del cumplimiento de sus obligaciones con todo su patrimonio presente y futuro, salvo las excepciones dispuestas por ley. Art. 1156 del Código Civil 2020, 31 LPRA sec. 9301. Por ello, ante el incumplimiento del deudor, el acreedor puede acudir a los remedios contractuales y legales correspondientes para exigir el pago de la deuda y ejecutar las

garantías constituidas para asegurar el cumplimiento de la obligación principal.

**-E-**

La hipoteca constituye un derecho real de realización de valor que opera como garantía de una obligación pecuniaria. *Westernbank v. Registradora*, 174 DPR 779, 784 (2008). Se caracteriza por su naturaleza accesoria e indivisible, su constitución de carácter registral y su gravamen directo sobre bienes inmuebles ajenos y enajenables, los cuales permanecen en posesión de su titular. Íd. De este modo, el negocio hipotecario descansa necesariamente sobre la coexistencia de dos figuras jurídicas: por un lado, la obligación principal y, por el otro, la hipoteca que la garantiza. *Liechty v. Descartes Saurí*, 109 DPR 496, 501-502 (1980). En ausencia de una obligación válida, no puede subsistir la hipoteca, pues esta carecería de causa que justifique su existencia. Íd.

Para la válida constitución de una hipoteca, el ordenamiento exige el cumplimiento de varios requisitos esenciales:

> (1) que se constituya para asegurar el cumplimiento de una obligación principal; (2) la cosa hipotecada pertenezca en propiedad a la persona que la hipoteca; (3) las personas que constituyan la hipoteca tengan la libre disposición de sus bienes o, en caso de no tenerla, se hallen legalmente autorizados al efecto. (Citas omitidas). De igual forma, es requisito indispensable para que una hipoteca quede debidamente constituida el que conste en una escritura pública y se inscriba en el Registro de la Propiedad. (Citas omitidas). *Westernbank v. Registradora*, supra, pág.784.

Por otra parte, la hipoteca presupone la existencia de una obligación en virtud de la cual el deudor responde con la totalidad de su patrimonio, tanto presente como futuro. *Romero v. S.L.G Reyes*, 164 DPR 721,737 (2005). En ese contexto, el acreedor hipotecario no solo puede hacer efectivo su crédito contra el patrimonio general del deudor, sino que también ostenta un derecho

real específico sobre el bien hipotecado, el cual continúa afecto a la deuda aun cuando pase a manos de terceros. Íd.

Así, el derecho de hipoteca se configura como un derecho real que vincula directamente el bien gravado —independientemente de quién ostente su titularidad o posesión— al cumplimiento de la obligación garantizada, permitiendo al acreedor exigir, en su momento, la realización de su valor para satisfacer el crédito. *R & G v. Registradora*, 162 DPR 602, 607 (2004).

**-F-**

Por otro lado, la prenda es un derecho real de garantía que recae sobre bienes muebles, corporales o incorporales, que se encuentran dentro del tráfico jurídico y son susceptibles de posesión. Art. 1000 del Código Civil de 2020, 31 LPRA sec. 8691. Este derecho se constituye mediante la entrega física o jurídica del bien al acreedor o a un tercero designado por las partes, con el propósito de asegurar el cumplimiento de una obligación. Íd. En la doctrina se ha reconocido que la prenda constituye un mecanismo de garantía que faculta al acreedor a conservar la cosa como medio de aseguramiento del crédito. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed. Barcelona, Ed. Bosch, Casa editorial, S.A., 1983, T. III, V. III, pág. 21.

En virtud de este derecho real, el acreedor queda facultado para retener la cosa dada en prenda en su poder —o en el de la tercera persona designada— hasta tanto se le satisfaga el crédito garantizado. Art. 1001 del Código Civil de 2020, 31 LPRA sec. 8692. Asimismo, si mientras subsiste la prenda el deudor incurre en otra obligación exigible con el mismo acreedor antes de haber satisfecho la primera, el acreedor puede extender la retención del bien pignorado hasta el pago de ambas deudas. Íd.

Finalmente, ante el incumplimiento de la obligación garantizada, el ordenamiento jurídico reconoce al acreedor la

facultad de hacer efectivo su crédito mediante la realización del bien dado en prenda conforme a lo pactado o, en su defecto, mediante los mecanismos establecidos en ley, incluyendo la venta en subasta pública y la eventual adjudicación del bien en determinadas circunstancias, con la correspondiente extinción de la obligación hasta donde alcance el producto de dicha ejecución. Art. 1008 del Código Civil de 2020, 31 LPRA sec. 8706.

**-G-**

La Ley Núm. 184-2012, según enmendada, conocida como *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, 32 LPRA sec. 2881, *et seq.* (Ley Núm. 184-2012), se aprobó "con el propósito de crear un proceso de mediación compulsoria ante los tribunales de Puerto Rico o ante los foros administrativos correspondientes, previo a llevar un proceso de ejecución de hipoteca (foreclousure) de cualquier propiedad principal de vivienda en Puerto Rico por cualquier entidad bancaria". Exposición de Motivos de la Ley de Mediación Compulsoria, *supra.* Este estatuto responde a una política pública dirigida a **proteger la <u>residencia principal</u> de los deudores hipotecarios** ante los efectos de la crisis económica que enfrenta Puerto Rico. (Énfasis y subrayado nuestro) *Scotiabank v. SLG Rosario-Ramos*, 205 DPR 537, 547 (2020).

En atención a ese propósito, el Art. 2 de Ley Núm. 184-2012, 32 LPRA sec. 2881 nota, define la mediación como un proceso no adjudicativo mediante el cual un tercero neutral facilita que las partes alcancen un acuerdo mutuamente satisfactorio para resolver su controversia. A su vez, define la mediación compulsoria como aquella instancia en la cual, previo a la ejecución de una hipoteca sobre una **propiedad residencial que constituya vivienda principal**, el tribunal debe referir a las partes a un proceso de mediación en el que se discutan alternativas para evitar la pérdida

del inmueble. (Énfasis y subrayado nuestro) Íd. Dicho proceso tiene como finalidad principal preservar la vivienda principal del deudor mediante acuerdos que permitan viabilizar el cumplimiento de la obligación hipotecaria sin la ejecución del inmueble.

Posteriormente, la Ley Núm. 38-2019 reafirmó este esquema al enmendar el Art. 3 de la Ley Núm. 184-2012, *supra*, reiterando que el tribunal debe citar a las partes a un proceso de mediación en casos de ejecución de hipoteca sobre viviendas principales. En ese procedimiento, el acreedor hipotecario viene obligado a informar al deudor sobre alternativas disponibles en el mercado para evitar la ejecución o la venta judicial de su vivienda principal, incluyendo mecanismos como venta corta, dación en pago o entrega voluntaria de título. Art. 3 de la Ley Núm. 84-2012, 32 LPRA sec. 2882. El estatuto establece expresamente que este proceso constituye un requisito previo de carácter jurisdiccional en aquellos casos que involucren la ejecución de una hipoteca sobre la vivienda principal del deudor, sin cuyo cumplimiento no puede dictarse sentencia ni celebrarse la venta judicial del inmueble. Íd.

No obstante, de su propio texto y propósito legislativo surge con claridad que la aplicación de la Ley Núm. 184-2012, *supra*, está limitada exclusivamente a procedimientos de ejecución hipotecaria que recaigan sobre la vivienda principal del deudor. En consecuencia, dicho mecanismo no es extensivo a transacciones de naturaleza comercial ni a financiamientos otorgados para fines empresariales, donde no está en controversia la protección de una residencia principal ni la política pública de preservación del hogar.

III.

En su primer señalamiento de error, la parte apelante argumentó que el TPI erró y abusó de su discreción al no permitirle presentar su oposición a la solicitud de sentencia sumaria en una fecha posterior, aun cuando, según sostiene, expuso razones válidas

y de peso para solicitar dicha prórroga, tratándose de un término no jurisdiccional ni fatal. No le asiste la razón. *Veamos.*

Conforme al derecho que antecede, es norma reiterada que los tribunales poseen discreción para manejar los términos procesales, incluyendo la concesión o denegatoria de prórrogas, con el fin de balancear la tramitación ágil de los casos y la adjudicación en sus méritos. No obstante, dicha discreción no es irrestricta, sino que está condicionada al cumplimiento con los requisitos establecidos en las Reglas 6.6 y 68.2 de Procedimiento Civil, *supra,* particularmente la acreditación de justa causa mediante explicaciones concretas y debidamente fundamentadas.

Asimismo, en el contexto específico de las solicitudes de sentencia sumaria, la Regla 36.3(b) de Procedimiento Civil, *supra,* dispone expresamente que "[l]a contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación". Dicha disposición responde al propósito de propiciar una resolución rápida y eficiente de aquellos casos en los que no exista controversia real sobre hechos materiales. Aunque el referido término no es jurisdiccional, ello no releva a las partes de cumplir diligentemente con los términos procesales ni limita la facultad del tribunal de exigir el cumplimiento estricto de estos en ausencia de justa causa.

En el presente caso, no existe controversia en cuanto a que el TPI concedió a la parte apelante un término de treinta (30) días para oponerse a la solicitud de sentencia sumaria, término incluso mayor al contemplado por la Regla 36.3(b) de Procedimiento Civil, *supra,* el cual vencía el 29 de enero de 2026. Tampoco está en disputa que la parte apelante no presentó oposición alguna dentro de dicho término ni solicitó prórroga antes de su vencimiento. Por el contrario, la solicitud de extensión de término fue presentada el 31 de enero de 2026, es decir, de forma tardía, luego de expirado el

término y tras haberse solicitado que la moción fuera dada por sometida.

Ante ese cuadro procesal, la solicitud de prórroga quedaba sujeta al estándar más riguroso aplicable a solicitudes presentadas fuera de término, el cual exige demostrar que la omisión se debió a justa causa. Regla 68.2 de Procedimiento Civil, *supra*; *Banco Metropolitano v. Berríos*, supra, pág. 723. Sin embargo, las razones ofrecidas por la parte apelante no satisfacen dicho estándar. La alegación de una carga de trabajo elevada constituye una circunstancia inherente al ejercicio de la abogacía y, por sí sola, no justifica el incumplimiento con términos procesales. Asimismo, la referencia a tratamientos médicos y posibles viajes fue planteada de manera general, sin detallar circunstancias específicas, fechas, limitaciones concretas ni evidencia alguna que permitiera al tribunal concluir que dichas situaciones imposibilitaban la presentación oportuna del escrito.

Nuestro Tribunal Supremo ha sido enfático en que la acreditación de justa causa requiere explicaciones particulares y evidenciadas, y que "las vaguedades y las excusas o los planteamientos estereotipados no cumplen con el requisito de justa causa". *Febles v. Romar*, supra, pág. 720. De igual forma, ha advertido que permitir excusas genéricas socavaría la integridad del sistema procesal. *Soto Pino v. Uno Radio Group*, supra, pág. 93. A la luz de dicha normativa, el TPI actuó correctamente al concluir que no se había demostrado justa causa.

Por otro lado, aunque el término para oponerse a una solicitud de sentencia sumaria no es jurisdiccional, ello no implica que su incumplimiento deba ser excusado automáticamente ni que el tribunal esté obligado a conceder prórrogas sin fundamento. La discreción judicial en estos casos precisamente existe para evitar que el incumplimiento injustificado sea premiado. En fin, la parte

apelante incumplió con un término concedido por el tribunal y no logró demostrar justa causa para su incumplimiento. En tales circunstancias, no se configura abuso de discreción alguno. Por el contrario, el TPI actuó conforme a derecho al denegar la prórroga solicitada y proceder con la adjudicación de la solicitud de sentencia sumaria. Dicho lo anterior, el primer señalamiento de error no se cometió.

Superado lo anterior, corresponde atender el segundo señalamiento de error, en el cual la parte apelante sostuvo que el TPI erró y abusó de su discreción al dictar sentencia sumaria en un caso que, según aduce, presenta hechos claramente controvertidos y sustanciales de índole jurisdiccional y relacionados al debido proceso de ley. Tampoco le asiste la razón.

Como es sabido, es norma reiterada que el mecanismo de sentencia sumaria, consagrado en la Regla 36 de Procedimiento Civil, *supra*, persigue adelantar una solución justa, rápida y económica de los pleitos, conforme al mandato rector de la Regla 1 de Procedimiento Civil, *supra.* Procede su concesión cuando de los documentos que obran en autos surge que no existe controversia real y sustancial sobre hechos esenciales y pertinentes y el derecho aplicable así lo justifica. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 676; Regla 36.3(e) de Procedimiento Civil, *supra.*

Al revisar la concesión de una solicitud de sentencia sumaria, este Tribunal Apelativo examina el expediente de *novo* y aplica los mismos criterios que el TPI. *Vera v. Dr. Bravo*, supra, págs. 334-335; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. Asimismo, le corresponde evaluar si la moción y su oposición cumplieron con los requisitos formales de la Regla 36.3 de Procedimiento Civil, *supra*, y determinar si existen hechos materiales en controversia o si solo resta aplicar el derecho a hechos no disputados. *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1025.

En ese contexto, la Regla 36.3 de Procedimiento Civil, *supra,* impone a la parte opositora el deber de controvertir específica y detalladamente los hechos propuestos por el promovente mediante referencia a evidencia admisible. La mera formulación de alegaciones generales o conclusiones jurídicas no es suficiente para derrotar una solicitud de sentencia sumaria. *SLG Zapata-Rivera v. J.F. Montalvo,* supra, págs. 432-433.

Del examen del expediente surge que la parte apelada cumplió cabalmente con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra.* Por el contrario, según resolvimos al atender el primer señalamiento de error, la parte apelante incumplió con el término concedido para oponerse a la solicitud de sentencia sumaria y no acreditó justa causa para dicho incumplimiento. En consecuencia, el TPI actuó correctamente al denegar la prórroga solicitada y dar por sometida la moción de sentencia sumaria. Así pues, al amparo de la Regla 36.3(e) de Procedimiento Civil, *supra,* el TPI podía considerar como no controvertidos los hechos debidamente sustentados por la parte apelada y adjudicar la controversia conforme a la prueba documental y al expediente ante su consideración.

A la luz de lo anterior y tras nuestra revisión de *novo,* concluimos que el TPI no erró al dictar sentencia sumaria a favor de la parte apelada. En consecuencia, procede considerar admitidas las determinaciones de hechos formuladas por el TPI en su *Sentencia,* toda vez que estas se encuentran sustentadas por prueba documental admisible no controvertida oportunamente por la parte apelante. Delimitado así el marco fáctico aplicable, resta examinar si, conforme al derecho sustantivo pertinente, Oriental acreditó su derecho a exigir el cumplimiento de las obligaciones asumidas por la parte apelante en el Contrato de Préstamo, incluyendo el cobro de las cantidades adeudadas y la ejecución de las garantías

hipotecarias y prendarias constituidas para asegurar el pago de la deuda.

Nuestro ordenamiento jurídico reconoce que las obligaciones pueden surgir de los contratos y que estas tienen fuerza de ley entre las partes. Arts. 1063 y 1233 del Código Civil de 2020, *supra*. En ese sentido, los tribunales no pueden relevar a una parte del cumplimiento de obligaciones libre y válidamente asumidas mediante contrato, salvo que exista algún vicio que afecte su validez. *Mercado, Quilichini v. U.C.P.R.*, supra, pág. 627. Asimismo, cuando los términos contractuales son claros y no dejan duda sobre la intención de las partes, estos obligan conforme al principio de *pacta sunt servanda* y no procede apartarse de lo pactado. Art. 354 del Código Civil de 2020, *supra*; *S.L.G. Francis-Acevedo v. SIMED*, supra, pág. 387.

En particular, el contrato de préstamo constituye un negocio jurídico mediante el cual el prestatario asume la obligación de devolver las sumas desembolsadas conforme a las condiciones pactadas. Arts. 1324 y 1327 del Código Civil de 2020, *supra*. Del mismo modo, nuestro ordenamiento reconoce la validez de garantías accesorias, tales como la hipoteca y la prenda, las cuales aseguran el cumplimiento de la obligación principal y facultan al acreedor a ejecutar los bienes gravados ante el incumplimiento del deudor. *Westernbank v. Registradora*, supra, pág. 784; Art. 1000 del Código Civil de 2020, *supra*.

Surge claramente de autos que Oriental presentó una solicitud de sentencia sumaria acompañada de abundante prueba documental admisible, incluyendo el contrato de préstamo, los pagarés, las escrituras de hipoteca, el contrato de prenda y las certificaciones correspondientes, mediante las cuales acreditó la existencia de la obligación, el incumplimiento de los deudores y las garantías constituidas para asegurar el pago de la deuda. En

particular, quedó demostrado que la parte apelante solicitó y obtuvo un financiamiento comercial por la suma de $322,500.00; que suscribió válidamente el Préstamo #8783721025-1 y los instrumentos accesorios de garantía; que incumplió con los términos de pago pactados; y que Oriental declaró la deuda vencida, líquida y exigible conforme a los términos contractuales. Asimismo, surge de las determinaciones de hechos formuladas por el TPI que la propia parte apelante admitió adeudar la suma principal reclamada.

Frente a dicha prueba, la parte apelante no presentó oposición oportuna, ni acompañó declaraciones juradas, evidencia documental admisible o una relación separada de hechos materiales controvertidos que derrotara la solicitud de sentencia sumaria. Por consiguiente, como mencionamos anteriormente, el TPI podía considerar admitidos los hechos adecuadamente sustentados por Oriental y resolver la controversia conforme a dicha prueba. Regla 36.3(e) de Procedimiento Civil, *supra.*

Aun examinando los planteamientos posteriormente esbozados por la parte apelante, concluimos que estos tampoco logran establecer controversia material alguna. Las alegaciones relacionadas con supuesto "préstamo predatorio", actuaciones improcedentes del acreedor o controversias jurisdiccionales descansan únicamente en afirmaciones conclusorias y especulativas, desprovistas de evidencia concreta que las sustente. Como reiteradamente ha expresado nuestro Tribunal Supremo, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; debe existir una controversia real y sustancial sobre hechos materiales. *Aponte Valentín v. Pfizer Pharm. et al.*, supra, pág. 277. Ello no ocurre en el presente caso.

En consecuencia, a tenor del marco jurídico antes expuesto y de los hechos no controvertidos que surgen del expediente,

concluimos que Oriental acreditó válidamente la existencia de una obligación contractual exigible, así como el incumplimiento de la parte apelante con las obligaciones de pago asumidas en el Contrato de Préstamo. Del mismo modo, quedó demostrado que las garantías accesorias constituidas, incluyendo las hipotecas y la prenda, fueron otorgadas válidamente para asegurar el cumplimiento de dicha obligación principal y, por ende, podían ser ejecutadas ante el incumplimiento acreditado.

No habiéndose presentado evidencia competente que impugnara la validez de los contratos suscritos, controvirtiera los hechos materiales debidamente sustentados o demostrara la existencia de defensa afirmativa alguna que derrotara la reclamación, el TPI actuó correctamente al hacer valer los acuerdos libremente pactados entre las partes y conceder el remedio sumario solicitado por la parte apelada conforme al principio de *pacta sunt servanda* y a las disposiciones aplicables del Código Civil de 2020.

De otra parte, tampoco nos persuade el argumento relativo a la alegada falta de jurisdicción por ausencia de mediación compulsoria. Surge claramente de las determinaciones de hechos formuladas por el TPI, particularmente la determinación número 23, que el préstamo objeto del presente pleito es uno de naturaleza comercial. En específico, el TPI determinó que el financiamiento fue solicitado y concedido para fines comerciales relacionados con Neumovida y no para propósitos personales, familiares o de consumo.

En consecuencia, la Ley Núm. 184-2012, *supra,* no resulta aplicable. Dicho estatuto limita expresamente su protección a préstamos de consumo o para fines personales o familiares garantizados con la residencia principal del deudor. La política pública que inspira la Ley Núm. 184-2012, *supra,* está dirigida a la preservación de la vivienda principal ante ejecuciones hipotecarias

residenciales, no a transacciones comerciales. *Scotiabank v. SLG Rosario-Ramos,* supra, pág. 547. Por ello, el requisito jurisdiccional de mediación compulsoria no se extiende a préstamos comerciales, aun cuando una propiedad residencial haya sido ofrecida como garantía accesoria de la obligación principal.

Así pues, el señalamiento jurisdiccional planteado por la parte apelante no genera controversia material de hechos ni derrota la procedencia del remedio sumario. Del mismo modo, el TPI resolvió correctamente que las obligaciones asumidas mediante el contrato de préstamo y los instrumentos accesorios eran válidas, exigibles y vinculantes entre las partes conforme al principio de *pacta sunt servanda.* Ante el incumplimiento acreditado, Oriental tenía derecho a acelerar la deuda, reclamar el pago total y ejecutar las garantías hipotecarias y prendarias constituidas a su favor.

Igualmente, correcta fue la desestimación de la Reconvención y de la Demanda contra Tercero. Tal como concluyó el TPI, las alegaciones formuladas por la parte apelante no identificaban actos u omisiones concretas constitutivas de incumplimiento contractual, dolo, negligencia o conducta ilícita atribuible a Oriental o a los terceros demandados. Tampoco se alegaron ni demostraron daños ciertos y cuantificables o un nexo causal suficiente que sostuviera una causa de acción viable. En consecuencia, dichas reclamaciones no exponían fundamentos jurídicos que justificaran la concesión de remedio alguno.

En suma, luego de examinar el expediente de *novo,* concluimos que no existe controversia real y sustancial sobre hechos materiales que requiriera la celebración de un juicio plenario. La parte apelante incumplió con las exigencias procesales de la Regla 36.3 de Procedimiento Civil, *supra,* y no presentó evidencia competente que derrotara la solicitud de sentencia sumaria. Así, el TPI actuó conforme a derecho al dictar sentencia

sumaria a favor de Oriental y ordenar la ejecución de las garantías pactadas. Por consiguiente, el segundo señalamiento de error tampoco se cometió.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones